# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| JAMES HIKIAU BESCHER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 12-3327-CV-S-BCW-P |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, James Hikiau Bescher, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on July 12, 2012, seeking to challenge his 2007 conviction and sentence for murder in the first degree, which were entered in the Circuit Court of Christian County, Missouri.

The petition raises three grounds for relief: (1) that the trial court abused its discretion in overruling petitioner's objection to expert testimony concerning trigger pull strength, (2) that the trial court erred in failing to intervene when the state asked petitioner about whether other witnesses were lying, and (3) that the trial court erred in failing to correct the prosecutor during his closing statement when he "misstated the law." (Doc. No. 1). Respondent contends that all grounds are without merit.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> In September 2001, [petitioner] and Joshua White ("White") burglarized the home of Kathy Davis ("Davis") in Taney County,

stealing some electronics and a computer that White had helped Davis purchase. Davis, who knew both men through her daughter, called the police, and to initiate their investigation, she gave them White's name and address. White subsequently called Davis, admitting that he and [petitioner] had committed the burglary, and offered to pay her back if she would not press charges. White made periodic payments to her for a while, then eventually stopped after paying her about $400. In October of 2001, the Taney County Sheriff's Department issued warrants for the arrest of both White and [petitioner], charging them with felony burglary. [Petitioner] was angry at White for "snitching" on him about the burglary. He told Nicole Smith ("Nicole") n.4, a single mother who sold methamphetamine for him, that he was going to kill White.

> n.4 Because more than one witness has the last name "Smith," we will refer to these witnesses by their first names to avoid any confusion. We mean no disrespect.

In late February of 2002, [petitioner] purchased a stolen gun. About five days later, [petitioner] ran into an acquaintance, Rocky Smith ("Rocky"), in Branson and asked Rocky to give him a ride to a friend's house near the Country Mart in Hollister. On the way, Rocky pulled into the Spirit Shop next to the Country Mart to put air in his tire. As he and [petitioner] were driving away from the air machine, Rocky saw White over in the Country Mart parking lot waving at him and yelling hello. Rocky pulled up next to White and stopped. The windows on Rocky's car were tinted so dark that it was difficult to see who was inside the car when standing more than two feet away. In a completely non-threatening manner, White walked to the passenger side of the car where [petitioner] was sitting and leaned down to start a conversation. As soon as White leaned down, [petitioner] pulled out a gun, opened the car door and stuck the gun over the top of the door frame. White moved his head to turn away, but [petitioner] shot White in the head from less than eighteen inches away. White dropped to the ground lifeless and was bleeding profusely. [Petitioner] waited one to two minutes, then told Rocky to "drive," and they sped off with tires squealing.

[Petitioner] told Rocky to drive him to the "Pit Stop," where [petitioner] and several of his friends lived in some apartments. [Petitioner] told his friends what had happened, and one of them wiped the finger prints [sic] off of the gun, and another threw the gun into a creek. [Petitioner] then went to Nicole's house and told her that he had shot White. [Petitioner] told her that if she testified

–2–

against him, he would kill her and her two young children. He said that he could take care of her even from jail because his girlfriend had a hit man he could call.

White arrived at the emergency room in critical condition and would have died immediately without medical intervention. The bullet had lodged in his spine, fracturing it and rendering him a quadriplegic. A breathing tube had to be placed in his trachea to keep him alive. White remained in the hospital for about five months until he contracted pneumonia as a result of the gunshot wound and died.

In the days immediately following the shooting, police found Rocky's car with blood spattered on the door. They also recovered the gun from the creek. [Petitioner] had checked into a hotel under a fake name, and was trying to catch a plane to another state, but he was unsuccessful. Police called [petitioner] on his cell phone asking him to come in and talk to them, and [petitioner] responded with "fuck you" and hung up on them. [Petitioner] was finally tracked down and arrested eight days after the shooting. Ballistics testing on the bullet removed from White's spine confirmed that [petitioner's] gun fired the shot that killed White.

[Petitioner] was charged, tried, and sentenced[.]

(Respondent's Exhibit E, pp. 2-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court

findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## GROUND 1

In ground 1, petitioner contends that "the trial court abused its discretion in overruling his objection to the testimony of the state's expert witness regarding the trigger pull strength on the gun used by petitioner to shoot victim White."

On direct appeal, the Missouri Court of Appeals held as follows:

> The State's expert witness, Evan Garrison, testified about the examinations he performs on firearms in the course of his employment with the Missouri State Highway Patrol Crime Laboratory. He also testified about the specific examinations he performed on the gun in the instant case. When he was explaining the trigger pull strength test that he performed on the gun, defense counsel objected on the grounds that Garrison's report disclosed to [petitioner] before trial did not contain any information about a trigger pull strength test. The State responded that the information regarding the pull test was not in any reports in its possession either. The information was contained in Garrison's personal notes, which Garrison produced on the spot for the trial judge. The prosecutor further informed the court that he had advised defense counsel that morning about the existence of the pull strength test and had offered defense counsel the opportunity to talk to Garrison about it. The trial judge stated that he understood that examiners' reports are only summaries, and that they usually have separate "bench notes," or "field notes," that contain what they did up to arriving at a conclusion for their report. He overruled

[petitioner's] objection, on the ground that [petitioner] could not show the State was in possession of a report that was not disclosed to him. The court offered defense counsel time to speak with Garrison before continuing with the trial, but defense counsel declined. Garrison went on to testify that the results of the trigger pull strength test he performed on the gun revealed a trigger pull of ten-and-a-half to eleven-and-a-half pounds, which was the average for that type of firearm.

Rule 25.03 requires the State, "upon written request of defendant's counsel," to disclose to defense counsel the following information within its possession or control as "designated in said request": "(5) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons[.]"
Rule 25.03 further requires that the "original of such request shall be filed in the court having jurisdiction to try the case." Rule 25.03(B). We have examined the record on appeal as compiled and filed by [petitioner] and cannot find any evidence of a written request from [petitioner] to the State to produce any reports from experts. Although [petitioner] argues in his brief that he made such a request to the State, he has not provided a copy of that request in the record on appeal, nor has he pointed out anything in the record that supports that such a request was filed in the trial court, as required by the rule. It is [petitioner's] duty to furnish this court with a sufficient record on appeal containing "the

Case 6:12-cv-03327-BCW   Document 14   Filed 11/16/12   Page 6 of 20

proceedings and evidence necessary to the determination of all questions to be presented" to this court for decision. Rule 30.04; *State v. Keeth*, 203 S.W.3d 718, 722 (Mo. App. 2006). "Failure to provide a sufficient record to permit determination of the issues requires that the point be denied." *Keeth*, 203 S.W.3d at 722. "Unless and until defendant makes a request for discoverable information or material, the State cannot be in violation of Rule 25.03 for failing to produce it." *State v. White*, 931 S.W.2d 825, 831 n.5 (Mo. App. 1996) n.5. Because [petitioner] has presented no record of a written request to the State to produce experts' reports, this court cannot assign any error to the trial court's overruling of [petitioner's] objection to Garrison's testimony regarding the trigger pull strength of the gun. Point I is denied.

> n.5 Unlike the record in *White*, the record before this court does not contain any responses from the State to requests for discovery from [petitioner], or any similar documents from which we could infer [petitioner] filed such requests. In addition, the prosecutor in this case did not violate his "broad duty 'to disclose evidence in [his] possession that is favorable to the accused and material to guilt or punishment.'" *State v. Parker*, 198 S.W.3d 178, 179-80 (Mo. App. 2006). Garrison's conclusion that the trigger pull strength of the gun was normal is not

–7–

>> exculpatory evidence; it is incriminating evidence in that it disproves [petitioner's] theory that the gun discharged accidentally. See *id.*

(Respondent's Exhibit E, pp. 4-6).

The resolution of ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

Ground 1 is denied.

## GROUND 2

In ground 2, petitioner contends that the trial court erred in failing to *sua sponte* intervene or declare a mistrial when the State asked petitioner whether other witnesses were lying.

On direct appeal, the Missouri Court of Appeals held as follows:

> In his second point on appeal, [petitioner] contends the trial court plainly erred in failing to *sua sponte* intervene during trial when the prosecutor asked [petitioner] several times whether other witnesses were lying. [Petitioner] argues that allowing the prosecutor to do so caused a manifest injustice, because it unfairly damaged any credibility the jury might have given him. [Petitioner] concedes that this claim of error is not preserved for review, because [petitioner] did not object at trial to the prosecutor's questions, nor did he include the claim in his Motion for New Trial. Therefore, our review of this claim, if any, is for plain error. Rule 30.20; *State v. Wurtzberger*, 40 S.W.3d 893, 897-98 (Mo. banc 2001).
>
> Rule 30.20 provides that claims of error affecting substantial rights, even if not preserved for review, may be considered by this court "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The decision

to grant plain error review lies within the reviewing court's discretion. *State v. Tabor*, 193 S.W.3d 873, 878 (Mo. App. 2006). Plain error review involves a two-step analysis. *State v. Golden*, 221 S.W.3d 444, 447 (Mo. App. 2007). First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. *Id.* "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo. App. 2005). Absent a finding of facial error, this court should decline its discretion to review the claim pursuant to Rule 30.20. *Golden*, 221 S.W.3d at 447. "If plain error is found, we proceed to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *State v. Stallings*, 158 S.W.3d 310, 315-16 (Mo. App. 2005).

The law in Missouri is clear that witnesses may not be asked to give their opinion on the truth or veracity of another witness' testimony. *Holliman v. Cabanne*, 43 Mo. 568, 570 (1869); *State v. Roper*, 136 S.W.3d 891, 900-01 (Mo. App. 2004). Therefore, we find facial error in the prosecutor asking [petitioner] on at least nine occasions whether other witnesses were lying or had any reason to lie. However, because of the substantial evidence concerning [petitioner's] conviction, we do not find any manifest injustice or that a miscarriage of justice occurred as a result of the prosecutor's improper questions. *Roper*, 136 S.W.3d at 903. "To hold

–10–

Case 6:12-cv-03327-BCW   Document 14   Filed 11/16/12   Page 10 of 20

that a miscarriage of justice or a manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." *Id.* Here, the overwhelming weight of the evidence admitted at trial undermines [petitioner's] theory that the shooting was accidental.

About a month before the shooting, [petitioner] told Nicole he was going to kill White for "snitching" on him. About five days before the shooting, [petitioner] purchased a stolen, and therefore untraceable, gun. Disinterested witnesses saw White approach Rocky's car and have a conversation, with no argument occurring. When [petitioner] shot White, White was turning away. [Petitioner] admitted at trial that he was angry with White and wanted to have a confrontation with him. [Petitioner] shot White in the head from a distance of less than eighteen inches, which instantly severed White's spine, dropping him to the ground, where he started bleeding profusely. [Petitioner] paused for a minute, then fled with squealing tires to the home of friends, who helped him get rid of the evidence against him. [Petitioner] threatened to kill Nicole and her children if she ever became a witness against him. He cursed at the police when they asked him to come in for questioning, checked into a hotel room under someone else's name, tried to flee the state, and was finally tracked down and arrested. Ballistics testing conclusively proved that [petitioner's] gun fired the shot that killed White.

In light of the overwhelming evidence supporting [petitioner's]

guilt, we cannot say the jury's verdict would have been different had the prosecutor not asked the improper questions. *Roper*, 136 S.W.3d at 903. Therefore, the trial court did not plainly err in failing to *sua sponte* intervene at trial. *See id.* (citing *State v. Dewel*, 835 S.W.2d 494 (Mo. App. 1992)) (trial judge is in the best position to judge the prejudicial effect of a question and should exercise *sua sponte* action only in exceptional circumstances). Point II is denied.

(Respondent's Exhibit E, pp. 6-9).

The resolution of this ground by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).

Ground 2 is denied.

## GROUND 3

In ground 3, petitioner contends that the trial court erred in not intervening, *sua*

*sponte*, during the prosecutor's closing argument when he misstated the law to the jury.

On direct appeal, the Missouri Court of Appeals held as follows:

In his third point on appeal, [petitioner] contends the trial court plainly erred in not *sua sponte* intervening during the prosecutor's closing argument when he allegedly misstated the law to the jury by telling them they had to "first reject murder in the first degree before you even consider murder in the second degree" and "you must look at the elements of murder in the first degree and reject all of those before you even consider murder in the second degree." [Petitioner] argues that the prosecutor's statements caused a manifest injustice, because juries in Missouri do not have to find a defendant "not guilty" of a greater offense before considering a lesser included offense, and the jury was clearly confused by the prosecutor's statements, as evidenced by their question to the trial judge during deliberations asking about the first-degree and second-degree murder instructions. [Petitioner] concedes that this claim is not preserved for appellate review because he did not object to the prosecutor's statements during closing argument. The record also reflects that [petitioner] failed to preserve this issue in his Motion for New Trial. Therefore, our review of this claim, if any, is for plain error. Rule 30.20; *Wurtzberger*, 40 S.W.3d at 897-98.

"[A]ny assertion that the trial court erred for failure to intervene *sua sponte* ignores the possibility that an attorney

may not have objected for strategic reasons." *State v. Bennett*, 201 S.W.3d 86, 88-89 (Mo. App. 2006) (citing *State v. Cole*, 71 S.W.3d 163, 171 (Mo. banc 2002)). "A party cannot fail to request relief, gamble on the verdict, and then, if adverse, request relief for the first time on appeal." *Id.* (citing *State v. McGee*, 848 S.W.2d 512, 514 (Mo. App. 1993)).

> [S]tatements made during closing argument rarely constitute plain error. Without an objection by counsel, a trial court's options are narrowed to uninvited interference with summation, which may itself constitute error. For the Defendant to carry his burden of showing plain error, he must prove that the prosecutor's statement had a decisive effect on the jury's verdict. The prosecutor's statement is decisive when there is a reasonable probability that the verdict would have been different had the error not been committed.

*State v. Wright*, 216 S.W.3d 196, 201 (Mo. App. 2007) (internal citations omitted).

The portion of the prosecutor's closing argument with which [petitioner] takes issue was as follows:

> Now, I suggest to you in conclusion, ladies and

–14–

Case 6:12-cv-03327-BCW   Document 14   Filed 11/16/12   Page 14 of 20

> gentlemen, . . . the order in which you consider these offenses is you have to first reject murder in the first degree before you even consider murder in the second degree.
>
> And I suggest to you that you will never go below murder in the first degree, which was Instruction No. 7, because when – at the beginning of Instruction no. 9 [sic] it says if you do not find the defendant guilty of murder in the first degree, then you will consider whether he is guilty of murder in the second degree.
>
> So you must look at the elements of murder in the first degree and reject all of those before you even consider murder in the second degree.
>
> And, ladies and gentlemen, this case is a murder in the first degree.

During its deliberations, the jury sent a note to the trial judge asking, "The jury wants to know if we must have a unanimous vote on Instruction 7 prior to discussion on Instruction 9." The court responded, "You have received all the instructions the Court is permitted to give you. You should follow the instructions provided to you."

[Petitioner] claims the prosecutor's statements constituted an

improper "acquit first" argument, because he instructed the jury that they must find [petitioner] "not guilty" of first-degree murder before even considering second-degree murder.

> Missouri's instructions on lesser-included offenses do not require that the defendant first be acquitted of the greater offense before the jury can consider the lesser offense. *State v. Wise*, 879 S.W.2d 494, 517 (Mo. banc 1994). Instead, MAI-CR3d 313.04 provides that juries are allowed to consider the lesser-included offense if they "do not find the defendant guilty" of the greater offense. *Id.* Therefore, an acquittal first argument is a misstatement of the law and can constitute reversible error.

*Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006).

We do not read the prosecutor's statement that the jury has "to first reject murder in the first degree" as instructing them that they must find [petitioner] "not guilty" of first-degree murder. "Reject" can mean simply not being able to agree on first-degree murder and moving on, which would be in accordance with the law. The prosecutor did not explicitly state that the jury had to unanimously find [petitioner] "not guilty" of first-degree murder before moving on to second-degree murder.

The prosecutor's second statement in reference to "the

–16–

beginning of instruction no. 9," that the jury "must look at the elements of murder in the first degree and reject all of those," is ambiguous and could be interpreted as a misstatement of the law.  For the jury to not find a defendant guilty of murder in the first degree, it need reject only one of the elements of the offense; it does not have to rule out every element – "all of those" – in order to not find him guilty of the offense. MAI-CR 3rd 313.02 ("unless you find and believe from evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the first degree").  On the other hand, the prosecutor's statement that the jury must consider and "reject all" of the elements could simply mean that if the jury rejects first-degree murder, then they are in essence rejecting "all" of the elements because "all" of the elements must be found in order to find first-degree murder; so if they cannot "all" be found, then they must "all" be rejected, as a combination of parts which make up the whole of the offense.

We need not parse the exact meaning of the prosecutor's words, because even if they are given the meaning the [petitioner] suggests, we do not find any prejudice to [petitioner] as a result of the prosecutor's argument, much less manifest injustice.  This is so because the jury was properly instructed with verdict-directing instructions modeled after MAI-CR 313.02 and MAI-CR3d 313.06, and the trial court responded to the jury's question by instructing them to follow those instructions.  *Tisius*, 183 S.W.3d at 217.  "The jury is presumed to have followed the trial court's

instructions." *Id.*

In addition, even if the prosecutor's statements were considered as improper, the strength of the evidence of [petitioner's] deliberation precludes a finding of manifest injustice. *Id.* The only difference between first-degree murder and second-degree murder is that first-degree murder requires the additional element of deliberation. Sections 565.020 and 565.021.

Here, [petitioner] told Nicole he was going to kill White as revenge for "snitching" on him, and bought a stolen, untraceable gun about five days before the shooting. Witnesses saw no altercation between [petitioner] and White, and testified that White was turning away when [petitioner] shot him. [Petitioner] remained at the scene for a minute after White was lying on the ground and bleeding profusely. He then fled the scene without calling for help, had his friends dispose of the gun, hit out at a hotel under someone else's name, and tried to leave the state. See *State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004) ("failure to seek medical help for a victim strengthens the inference that the defendant deliberated"); *Nicklasson v. State*, 105 S.W.3d 482, 485 n.1 (Mo. banc 2003) (deliberation shown by defendant's attempt to flee the jurisdiction). [Petitioner] admitted at trial that he was angry with White and wanted to have a confrontation with him. Because of the substantial evidence of deliberation, it is not likely the jury's verdict would have been

–18–

> different without the prosecutor's statements. *Tisius*, 183
> S.W.3d at 217; *Wright*, 216 S.W.3d at 201. Therefore, the
> trial court did not plainly err in failing to *sua sponte* intervene
> during his closing argument. *See Roper*, 136 S.W.3d at 903
> (citing *Drewel*, 835 S.W.2d 494) (trial judge should exercise
> *sua sponte* action only in exceptional circumstances). Point
> III is denied.

(Respondent's Exhibit E, pp. 9-13).

The resolution of ground 3 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).

Ground 3 is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional

right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

/s/ Brian C. Wimes
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: November 16, 2012.